**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| BETTY J. FARIZER,<br><br>Plaintiff,<br><br>v.<br><br>NEW DAY FINANCIAL, LLC,<br><br>Defendant. | ) | C.A. No. 06-337-ML |

**MEMORANDUM IN SUPPORT OF**
**PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

Plaintiff has requested that this Court enter an order determining that this action may proceed as a class action against Defendant New Day Financial, LLC ("Defendant"). This Memorandum is submitted in support of that Motion.

## I. Nature of the Case

Plaintiff has filed this class action under the Fair Credit Reporting Act ("FCRA"), contending that the accessing of Plaintiff's consumer report without Plaintiff's consent or any lawful reason violated the FCRA.

Plaintiff contends that Defendant's accessing of consumers' reports without their consent or any lawful reason violates the FCRA, 15 U.S.C. § 1681b, which provides it is permissible to obtain a consumer report on a consumer only with the written consent of the consumer or for certain "permissible purposes," which insofar as pertinent here, are the extension of credit to, or review or collection of an account of, the consumer, employment purposes, the underwriting of insurance, in connection with a business transaction that is initiated by the consumer, or to make a "firm offer of credit." The requester must expressly certify to the credit bureau that such a "permissible purpose" exists.

Defendant obviously intended to qualify under the "firm offer of credit" exception to the general prohibition against accessing consumer reports without the permission

of the person whom they pertain or the affirmative initiation of a transaction by that person, for the solicitation contained the requisite language, albeit in an insufficient manner. However, the sending of the solicitation did not qualify under the "firm offer of credit" exception, because the purported "firm offer" is vague and totally lacking in terms. It has no value beyond a solicitation for business, the sending of which is not a "permissible purpose" for accessing a consumer report. Cole v. U. S. Capital, Inc., 389 F.3d 719, 726-27 (7th Cir. 2004).

## II. Standard for Class Certification

Conceptually, the present case is very similar to a class action under the Fair Debt Collection Practices Act or the Truth in Lending Act, where a single form document (a collection letter in the case of the FDCPA or a disclosure statement in the case of TILA) is sent to a class of consumers. Such actions are almost ideally suited for class certification, particularly where, as here, only statutory damages are sought. Keele v. Wexler & Wexler, 95 C 3483, 1996 WL 124452, 1996 U.S. Dist. LEXIS 3253 (N.D. Ill. Mar. 18, 1996), aff'd, 149 F.3d 589 (7th Cir. 1998)(FDCPA); Mace v. Van Ru Credit Corp., 109 F.3d 332, 347 (7th Cir. 1997)(FDCPA); Avila v. Van Ru Credit Corp., 94 C 3234, 1995 WL 683775, 1995 U.S. Dist. LEXIS 461 (N.D. Ill. Jan. 26, 1995), aff'd sub nom., Avila v. Rubin, 84 F.3d 222 (7th Cir. 1996)(FDCPA); Haynes v. Logan Furniture Mart, Inc., 503 F.2d 1161 (7th Cir. 1974)(TILA); Van Jackson v. Check 'N Go of Illinois, Inc., 193 F.R.D. 544 (N.D. Ill. 2000)(TILA).

In the present case, the critical issue is whether Defendant's mailing contained a "firm offer of credit." This inquiry is uniform with respect to the entire class. It requires an analysis of the solicitation and Defendant's practices. Murray v. GMAC Mortgage Corp., 434 F. 3d 948, 955-56 (7th Cir. 2006).

Classes have been certified in the following FCRA cases based upon Cole: Murray v. New Cingular Wireless Servs., Inc., 232 F.R.D. 295 (N.D. Ill. 2005); Murray v. Cingular Wireless II, LLC, 05 C 1334, 2005 U.S. Dist. LEXIS 39542 (N.D. Ill. Dec. 22, 2005); Kudlicki v Farragut Fin. Corp., 05 C 2459, slip op. (N.D. Ill. Sept. 30, 2005); Tremble v. Ocean

Bank, 05 C 2625, slip op. (Mar. 21, 2006); Murray v. Sunrise Chevrolet et al., 04 C 7668, 2006 U.S. Dist. LEXIS 19626 (N.D. Ill. Mar. 30, 2006); Wanek v. CMA Mortgage, Inc., 05 C 4775, slip op. (N.D. Ill. Apr. 17, 2006); Cavin v. Home Loan Center, 236 F.R.D. 387 (N.D. Ill. 2006); Murray v. Indymac Bank, F.S.B., 04 C 7669, 2006 U.S. Dist. LEXIS 54513 (N.D. Ill. Aug. 6, 2006); Bonner et al. v. Home123 et al., 2:05-cv-146, 2006 U.S. Dist. LEXIS 54418 (N.D. Ind. Aug. 4, 2006); Bruce v. KeyBank, N.A., 2:05-cv-330, 2006 U.S. Dist. LEXIS 60207 (N.D. Ind. Aug. 7, 2006); Pavone v. Aegis Lending Corp., 05 C 5129, 2006 U.S. Dist. LEXIS 62157 (N.D. Ill. Aug. 31, 2006) and Sampson v. Western Sierra Acceptance Corp., 03 C 1396, 2003 U.S. Dist. LEXIS 5415 (N.D. Ill. Apr. 1, 2004), later opinion, 2004 U.S. Dist. LEXIS 11779 (N.D. Ill. July 1, 2004).

The following other cases brought pursuant to the FCRA have certified classes as well: In re Trans Union Corp. Privacy Litig., No. 00 C 4729, MDL Docket No. 1350, 2005 U.S. Dist. LEXIS 17548 (Aug. 17, 2005); Thomas v. NCO Fin. Sys., Inc., 00-5118, 2004 U.S. Dist. LEXIS 5405 (E.D. Pa. Mar. 31, 2004)(settlement; illegal "reaging" of old debts on credit reports); Ciccarone v. B. J. Marchese, Inc., 03-1660, 2004 U.S. Dist. LEXIS 26489 (E.D. Pa. Dec. 14, 2004), later opinion, 2004 U.S. Dist. LEXIS 25747 (E.D. Pa. Dec. 22, 2004)(settlement; alleged unauthorized accessing of consumer reports); Stoner v. CBA Info. Servs., 352 F.Supp.2d 549 (E.D. Pa. 2005)(settlement; alleged policy of refusing to investigate consumer disputes regarding items on their credit reports); Pakkala v. First Am. CREDCO, 98-5251, 157 NJLJ 1155 (D. N.J. Oct. 1, 1999)(similar; settlement); In re Farmers Ins. Co. FCRA Litig., CIV-03-158-F, MDL Docket No. 1564, slip op. (W.D.Okl. Apr. 13, 2006)(class certified in action alleging failure to give notice of adverse action); White v. Imperial Adjustment Corp., 99-3804, 2002 U.S. Dist. LEXIS 26610 (E.D. La. Aug. 6, 2002), aff'd by unpublished opinion, 2003 U.S. App. LEXIS 20162 (5th Cir. Oct. 2, 2003)(impermissible accessing of consumer reports); Mathews v. Gov't Employees Ins. Co., 23 F.Supp.2d 1160 (S.D. Cal. 1998)(same).

In Mirfasihi v. Fleet Mortgage Corp., 356 F.3d 781 (7th Cir. 2004), the Seventh

Circuit implicitly approved of a class in an action “brought on behalf of approximately 1.6 million persons whose home mortgages were owned by Fleet Mortgage Corporation” and alleging that “without their permission Fleet transmitted information about their financial needs that it had obtained from their mortgage papers to telemarketing companies which then, in conjunction with Fleet, used that information and deceptive practices to sell those customers financial services they didn't want.” Only 190,000 persons bought something; there was also “a ‘pure’ information- sharing class of 1.4 million customers of Fleet whose financial information Fleet transmitted to the telemarketers but who did not buy anything from them.” The case came before the Seventh Circuit on an appeal from an order approving a settlement that extinguished the claims of the “pure information-sharing class” without paying them anything. The Court stated that it thought the invasion of privacy victims had valid claims that could be prosecuted on a class-wide basis:

> But the district judge did not find that their claims were worthless, and it would be surprising if they were. The allegedly unauthorized transmittal of information to the telemarketers may have violated state consumer protection statutes that authorize the victims of the violation to obtain damages; it may also have infringed state common law protections of privacy, including financial privacy. Fleet's "privacy policy" assures its consumers that Fleet "shares the minimum amount of information necessary for that company [i.e., the company with which it is sharing the information] to offer its product or service," and this statement, which if false as alleged may well be fraudulent, might support a claim under state consumer protection or privacy law. Such a claim would not be a sure bet, but colorable legal claims are not worthless merely because they may not prevail at trial. A colorable claim may have considerable settlement value (and not merely nuisance settlement value) because the defendant may no more want to assume a nontrivial risk of losing than the plaintiff does. 356 F.3d at 783.

On remand, the Court granted approval to a classwide settlement. Mirfasihi v. Fleet Mortgage Corp., 01 C 722, 2005 U.S. Dist. LEXIS 16701 (N.D. Ill. Aug. 11, 2005).

Some concern was expressed in earlier decisions about the accumulation of statutory damages under the FCRA, but Plaintiff has sought to avoid this problem by defining a relatively modest class (Massachusetts and Rhode Island); in any event it is now clear that the court has discretion to adjust the statutory damages if found to be required by due process. Murray v. GMAC Mortgage Corp., supra; Parker v. Time Warner Entm’t Co., 331 F.3d 13, 22,

27-28 (2nd Cir. 2003)(possibility of excessive damages “might be invoked, not to prevent certification, but to nullify that effect and reduce the aggregate damage award”).

**III. The Proposed Class Meets the Requirements for Certification**

In order to maintain a class action, plaintiffs must demonstrate that they and the class they wish to represent, meet all four requirements of Fed. R. Civ. P. 23(a) and fit into one of the categories enumerated in Fed. R. Civ. P. 23(b). Mack v. Suffolk County, 191 F.R.D. 16, 19 (D. Mass. 2000). To meet the threshold requirements of Fed. R. Civ. P. 23(a), plaintiff must establish that the class has the following qualities:

> (1) numerosity (a ‘class [so large] that joinder of all members is impracticable’); (2) commonality (‘questions of law or fact common to the class’); (3) typicality (named parties’ claims or defenses ‘are typical . . . of the class’); and (4) adequacy of representation (representatives ‘will fairly and adequately protect the interests of the class’).

Amchem Products, Inc. v. Windsor, 521 U.S. 591, 613 (1997).

**A. Rule 23(a)(1) -- Numerosity**

Federal Rule of Civil Procedure 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." "When the class is large, numbers alone are dispositive . . . ." Riordan v. Smith Barney, 113 F.R.D. 60, 62 (N.D.Ill.1986). Where the class numbers at least 40, joinder is generally considered impracticable. Mowbray v. Waste Management Holdings, Inc., 189 F.R.D. 184 (D.Mass. 1999)(certified class of 81); Cypress v. Newport News Gen. & Nonsectarian Hosp. Ass'n, 375 F.2d 648, 653 (4th Cir. 1967)(18 sufficient); Swanson v. Am. Consumer Indus., 415 F.2d 1326, 1333 (7th Cir. 1969)(40 sufficient); Riordan, supra, 113 F.R.D. 60 (10-29 sufficient); Philadelphia Elec. Co. v. Anaconda Am. Brass Co., 43 F.R.D. 452, 463 (E.D. Pa. 1968)(25 sufficient); Sala v. Nat’l R. Pass. Corp., 120 F.R.D. 494, 497 (E.D. Pa. 1988)(40-50 sufficient); Scholes v. Stone, McGuire & Benjamin, 143 F.R.D.181, 184 (N.D. Ill. 1992)(about 70). It is not necessary that the precise number of class members be known. "A class action may proceed upon estimates as to the size of the proposed class." In re Alcoholic Beverages Litig., 95 F.R.D. 321 (E.D.N.Y. 1982); Lewis v.

Gross, 663 F. Supp. 1164, 1169 (E.D.N.Y. 1986).

Here, as explained in Plaintiff's Motion for Class Certification, Defendant has admitted numerosity.

**B. Rule 23(a)(2) -- Commonality; and Rule 23(b)(3) -- Common Questions of Law or Fact Predominate**

Federal Rule of Civil Procedure 23(a)(2) requires that there be a common question of law or fact. Rule 23(b)(3) requires that the questions of law or fact common to all members of the class predominate over questions pertaining to individual members.

These requirements are normally satisfied when there is an essential common factual link between all class members and the defendant for which the law provides a remedy. Halverson v. Convenient Food Mart, Inc., 69 F.R.D. 331 (N.D. Ill. 1974). Where a question of law involves "standardized conduct of the defendants toward members of the proposed class, a common nucleus of operative facts is typically presented, and the commonality requirement . . . is usually met." Kinney v. Metro Global Media, Inc., No. 99-579 ML, 2002 U.S. Dist. LEXIS 18628 (Dist. R.I. Aug. 22, 2002)(Lisi, J.), United States v. Rhode Island Dept. of Employment Sec., 619 F, Supp. 509, 513 (D.R.I. 1985). A common course of conduct, such as that alleged here, gives rise to common questions which make class certification appropriate. Muth v. Dechert, Price & Rhoads, 70 F.R.D. 602, 607 (E.D. Pa. 1976); In re Asbestos Sch. Litig., 104 F.R.D. 422 (E.D. Pa. 1984); Franklin v. City of Chicago, 102 F.R.D. 944, 949 (N.D.Ill. 1984). Lucas v. GC Servs., LP, 226 F.R.D. 337, 340 (N.D. Ind. 2005), Jackson v. Nat. Action Fin. Servs., 227 F.R.D. 284, 287 (N.D. Ill. Apr. 11, 2005); Franklin v. City of Chicago, 102 F.R.D. 944, 949 (N.D. Ill. 1984); Patrykus v. Gomilla, 121 F.R.D. 357, 361 (N.D. Ill. 1988). The authorities hold that cases dealing with the legality of standardized documents or conduct are generally appropriate for resolution by means of a class action because the document or conduct is the focal point of the analysis. Lucas, supra; Halverson, supra, 69 F.R.D. at 331; Haroco v. Am. Nat'l Bank, 121 F.R.D. 664, 669 (N.D. Ill. 1988)(improper computation of interest); Kleiner v. First Nat'l Bank, 97 F.R.D. 683 (N.D. Ga. 1983)(same); Heastie v. Community Bank,

125 F.R.D. 669 (N.D. Ill. 1989)(execution of home improvement financing documents in sequence that evaded consumers' rescission rights). This is true even though the nature and amount of damages may differ among the members of the class. Id.

In this case, the "common nucleus of operative fact," Halverson, supra, 69 F.R.D. at 335, is that Defendant obtained or used (or caused the use) of consumer report information for the purpose of sending Plaintiff and the class members a solicitation in the form attached to the Amended Complaint as Exhibit A. The dispositive issue is whether the solicitation complied with the "firm offer of credit" exception to the general rule in the FCRA that it is not permissible to obtain consumer reports on someone unless they give permission to do so or they initiate a transaction with the person who obtains the consumer report.

Whether the solicitation complied with the "firm offer of credit" exception turns on whether a "firm offer of credit" was in fact made and is class-wide in nature – the determination applies with equal force to everyone who was sent a solicitation. Murray v. GMAC Mortgage Corp., supra.

The only individual issue is the identification of the consumers who were sent the solicitation materials, which Defendant is capable of identifying. Readily answered questions of this nature do not present an obstacle to class certification. Heastie v. Cmty. Bank, supra, 125 F.R.D. at 669 (court found that common issues predominated where individual questions of injury and damages could be determined by "merely comparing the contract between the consumer and the contractor with the contract between the consumer and Community Bank"); Wilkinson v. F.B.I., 99 F.R.D. 148, 157 (C.D. Cal. 1983)("a need for individual proof of damages would not preclude class certification. 'The amount of damages is invariably an individual question and does not defeat class treatment.'"); Franklin, supra, 102 F.R.D. at 949 (similar). In the present case, not even damages present an individual question, for Plaintiff only seeks statutory damages. In any event, the Seventh Circuit has held that the need for "separate proceedings of some character . . . to determine the entitlements of the individual class members

to relief" should "not defeat class treatment of the question whether defendants violated [the law]." Carnegie v. Household Int'l, Inc., 376 F.3d 656, 661 (7th Cir. 2004).

> Once that question is answered, if it is answered in favor of the class, a global settlement . . . will be a natural and appropriate sequel. And if there is no settlement, that won't be the end of the world. Rule 23 allows district courts to devise imaginative solutions to problems created by the presence in a class action litigation of individual damages issues. Those solutions include (1) bifurcating liability and damage trials with the same or different juries; (2) appointing a magistrate judge or special master to preside over individual damages proceedings; (3) decertifying the class after the liability trial and providing notice to class member concerning how they may proceed to prove damages; (4) creating subclasses; or (5) altering or amending the class.

Id.

**C. Rule 23(a)(3) – Typicality**

Rule 23(a)(3) requires that the claims of the named plaintiffs be typical of the claims of the class. "The question is simply whether a named plaintiff, in presenting his case, will necessarily present the claims of the absent plaintiffs." Priest v. Zayre Corp., 118 F.R.D. 552, 555 (D.Mass. 1988). "The named plaintiff's claims are typical of the class when the plaintiff's injuries arise from the same event, practice or course of conduct of the defendant as do the injuries which form the basis of the class claim." Adair v. Sorenson, 134 F.R.D. 13, 17 (D.Mass. 1991) "The claims of a class representative are 'typical' when the representative's injuries arise from the same course of conduct as do the injuries that form the basis of the class claims." Fraser v. Major League Soccer, L.L.C., 180 F.R.D. 178, 181 (D.Mass. 1998). To be typical within the meaning of the rule simply requires that the claims of the named plaintiff arise from the same type of conduct which give rise to the class members' claims. Burstein v. Applied Extrusion Technologies, Inc., 153 F.R.D. 488, 491 (D.Mass. 1994).

In the instant case, typicality is inherent in the class definition. By definition, each of the class members has been subjected to the same practice as the named Plaintiff, namely their credit was accessed without their authorization for the purpose of mailing a letter that was nothing more than a general solicitation for business.

**D. Rule 23(a)(4) -- Adequacy of Representation**

The rule also requires that the named plaintiff provide fair and adequate protection for the interests of the class. That protection involves two factors: (a) the plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation; and (b) the plaintiff must not have interests antagonistic to those of the class. Adair, supra, 134 F.R.D. at 18 (D.Mass. 1991); accord, Andrews v. Bechtel Power Corp., 780 F.2d 124, 130 (1st Cir. 1985); Wetzel v. Liberty Mutual Ins. Co., 508 F.2d 239, 247 (3d Cir. 1975); In re Alcoholic Beverages Litigation, 95 F.R.D. 321 (E.D.N.Y. 1982).

Plaintiff understands the obligations of a class representative and has retained experienced counsel. By agreement with Plaintiff, Plaintiff's counsel is working on a contingency basis. Plaintiff's counsel will be paid whatever the Court allows, if and only if Plaintiff prevails on her claims. Thus, the interests of Plaintiff's counsel are in unity with the interests of Plaintiff and the class.

The second relevant consideration under Rule 23(a)(4) is whether the interests of the named plaintiff are coincident with the general interests of the class. Here, both Plaintiff and the class members seek money damages as the result of Defendant's violation of the FCRA. Given the identity of claims between Plaintiff and the class members, there is no potential for conflicting interests in this action. There is no antagonism between the interests of the named Plaintiff and those of the class.

**E. Rule 23(b)(3) -- Class Action Is Superior to Other Available Methods of Resolving This Controversy.**

Efficiency is the primary focus in determining whether the class action is the superior method for resolving the controversy presented. Eovaldi v. First Nat'l Bank, 57 F.R.D. 545 (N.D. Ill. 1972). The Court is required to determine the best available method for resolving the controversy in keeping with judicial integrity, convenience, and economy. Scholes supra, 143 F.R.D. at 189; Hurwitz v. R.B. Jones Corp., 76 F.R.D. 149 (W.D. Mo. 1977). It is proper for a court, in deciding the "best" available method, to consider the ". . . inability of the poor or uninformed to enforce their rights, and the improbability that large numbers of class members

would possess the initiative to litigate individually." Haynes v. Logan Furniture Mart, Inc., supra, 503 F.2d at 1165.

In this case there is no better method available for the adjudication of the claims which might be brought by each consumer who was sent a solicitation. The vast majority of consumers are undoubtedly unaware that their rights were violated.

The fact that there are large numbers of class members "is no argument at all" against certification. Carnegie v. Household Int'l, Inc., supra, 376 F.3d at 660-61. "The more claimants there are, the more likely a class action is to yield substantial economies in litigation. It would hardly be an improvement to have in lieu of this single class action 17 million suits each seeking damages of $15 to $30. . . . The realistic alternative to a class action is not 17 million individual suits, but zero individual suits, as only a lunatic or a fanatic sues for $30. But a class action has to be unwieldy indeed before it can be pronounced an inferior alternative – no matter how massive the fraud or other wrongdoing that will go unpunished if class treatment is denied – to no litigation at all." Id.

The special efficacy of the consumer class action has been noted by the courts and is applicable to this case:

> A class action permits a large group of claimants to have their claims adjudicated in a single lawsuit. This is particularly important where, as here, a large number of small and medium sized claimants may be involved. In light of the awesome costs of discovery and trial, many of them would not be able to secure relief if class certification were denied . . . .

In re Folding Carton Antitrust Litig., 75 F.R.D. 727, 732 (N.D. Ill. 1977)(citations omitted).

Another court noted:

> Given the relatively small amount recoverable by each potential litigant, it is unlikely that, absent the class action mechanism, any one individual would pursue his claim, or even be able to retain an attorney willing to bring the action. As Professors Wright, Miller and Kane have discussed, in analyzing consumer protection class actions such as the instant one, 'typically the individual claims are for small amounts, which means that the injured parties would not be able to bear the significant litigation expenses involved in suing a large corporation on an individual basis. These financial barriers may be overcome by permitting the suit to be brought by one or more consumers on behalf of others who are similarly situated.' 7B Wright et al., §1778, at 59; see e.g., Phillips Petroleum Co. v.

> Shutts, 472 U.S. 797, 809 (1985) ('Class actions . . . may permit the plaintiff to pool claims which would be uneconomical to litigate individually.') The public interest in seeing that the rights of consumers are vindicated favors the disposition of the instant claims in a class action form.

Lake v. First Nationwide Bank, 156 F.R.D. 615, 628-629 (E.D. Pa 1994).

Class certification will provide an efficient and appropriate resolution of the controversy. Zanni v. Lippold, 119 F.R.D. 32, 35 (C.D. Ill. 1988).

## IV. Conclusion

The proposed class meets the requirements of Rules 23(a) and (b)(3). Plaintiff respectfully requests that this Court certify the class as set forth above.

Respectfully submitted,

s/ Cathleen M. Combs
Cathleen M. Combs (pro hac vice)
EDELMAN, COMBS, LATTURNER
& GOODWIN, LLC
120 S. LaSalle Street, 18th Floor
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)

Christopher M. Lefebvre
CLAUDE F. LEFEBVRE AND
CHRISTOPHER M. LEFEBVRE, P.C.
Two Dexter Street
Pawtucket, RI 02860
P.O. Box 479 (Mailing address)
Pawtucket, RI 02862
(401) 728-6060
(401) 728-6534 (fax)

**CERTIFICATE OF SERVICE**

I, Cathleen M. Combs, do hereby certify that a copy of the preceding document was filed electronically on March 29, 2007. Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

Jeffrey S. Brenner jbrenner@nixonpeabody.com, ProEfile@nixonpeabody.com; mryone@nixonpeabody.com

Naomi A. Carry ncarry@dykema.com

Richard E. Gottlieb rgottlieb@dykema.com, ifrye@dykema.com

J. Kevin Snyder ksnyder@dykema.com

s/ Cathleen M. Combs
Cathleen M. Combs (pro hac vice)

Cathleen M. Combs
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
120 S. LaSalle Street, 18th Floor
Chicago, Illinois 60660
(312) 739-4200
(312) 419-0379 (FAX)

Christopher M. Lefebvre
CLAUDE F. LEFEBVRE AND
CHRISTOPHER M. LEFEBVRE, P.C.
Two Dexter Street
Pawtucket, RI 02860
P.O. Box 479 (Mailing address)
Pawtucket, RI 02862
(401) 728-6060
(401) 728-6534 (fax)